No. 26-926

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

STATE OF CALIFORNIA; GAVIN NEWSOM, *in his official capacity as Governor of California*; ROBERT BONTA, *in his official capacity as Attorney General of California,*
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California

## REPLY IN SUPPORT OF
## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
## FOR INJUNCTION PENDING APPEAL

BRETT A. SHUMATE
  *Assistant Attorney General*
ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
ANDREW M. BERNIE
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3511*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................1

ARGUMENT.................................................................................................2

    A.    The federal government will prevail on the merits. ................................2

    B.    The remaining factors support an injunction............................................11

CONCLUSION .............................................................................................12

CERTIFICATE OF COMPLIANCE

i

## TABLE OF AUTHORITIES

### Cases

*Arizona v. California*,
283 U.S. 423 (1931) ..............................................................................................3

*Boeing Co. v. Movassaghi*,
768 F.3d 832 (9th Cir. 2014) ............................................................................4, 5

*GEO Group, Inc. v. Newsom*,
50 F.4th 745 (9th Cir. 2022) .............................................................................4, 5

*Hancock v. Train*,
426 U.S. 167 (1976) ..........................................................................................2, 5

*Hernandez v. Mesa*,
589 U.S. 93 (2020) ...............................................................................................6

*In re Neagle*,
135 U.S. 1 (1890) .................................................................................................2

*Johnson v. Maryland*,
254 U.S. 51 (1920) ............................................................................................2, 6

*Martin v. United States*,
605 U.S. 395 (2025) ..............................................................................................6

*Mayo v. United States*,
319 U.S. 441 (1943) ..............................................................................................2

*McCulloch v. Maryland*,
17 U.S. (4 Wheat.) 316 (1819) .............................................................................2

*Texas v. DHS*,
123 F.4th 186 (5th Cir. 2024)...............................................................................7

*Texas v. DHS*,
144 S. Ct. 715 (2024) ............................................................................................7

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) ...................................................................... 4, 5, 11

ii

*United States v. City of Arcata*,
   629 F.3d 986 (9th Cir. 2010) ................................................................................4, 9

*United States v. Washington*,
   596 U.S. 832 (2022) ...................................................................................................2

**OTHER**

*Regulate*,
   Black's Law Dictionary (12th ed. 2024) .................................................................3

## INTRODUCTION AND SUMMARY OF ARGUMENT

States cannot directly regulate the federal government absent express congressional authorization. That longstanding rule controls this case.

California's opposition neither seriously denies that the No Vigilantes Act purports to directly regulate the federal government (it obviously does), nor contends that Congress has expressly authorized its law (it obviously has not). California instead suggests that it is free to regulate the federal government whenever (in its view) that regulation does not "substantially burden" federal operations (and perhaps even sometimes when it does). None of the cases California cites even colorably support that contention. California cites cases involving congressional consent to state regulation, the incorporation of state law into federal law, and regulation of federal contractors and other non-federal entities. By contrast, California does not cite a single case permitting a direct state regulation of the federal government's operations absent federal assent.

The near certainty the federal government will prevail renders the remaining factors less important. But those factors likewise overwhelmingly favor an injunction pending appeal. Irreparable harm is presumed in this context and, in any event, it would be chaos for federal officers to be threatened with state prosecution if they do not perform their federal law-enforcement functions in line with orders from the state. An injunction pending appeal should be granted.

# ARGUMENT

## A.      The federal government will prevail on the merits.

**1.** "[T]he activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943). That means that where "Congress does not affirmatively declare its instrumentalities or property subject to regulation," "the federal function must be left free" of regulation. *Hancock v. Train*, 426 U.S. 167, 179 (1976) (quotation marks omitted). This rule is absolute. *See Mayo*, 319 U.S. at 445 ("No other adjustment of competing enactments or legal principles is possible."). California quibbles that "courts have most often applied that doctrine when state laws discriminate against federal operations." Opp'n 10. But the federal government is immune "from state laws that directly regulate *or* discriminate against it." *United States v. Washington*, 596 U.S. 832, 835 (2022) (emphasis added). The relative rarity of state efforts to directly regulate the federal government simply reflects that this prohibition has been well established for centuries, such that states today rarely even try to do anything like what California has attempted here.

In any event, there have been plenty of such cases. Maryland could not tax the Bank of the United States, *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819), or enforce its driver's-license laws against federal postal workers delivering mail, *Johnson v. Maryland*, 254 U.S. 51 (1920); California could not prosecute a Deputy U.S. Marshal for his actions protecting a Supreme Court Justice, *In re Neagle*, 135

U.S. 1, 75 (1890); and Arizona could not superimpose its own approval process on a congressionally authorized dam-construction project, *Arizona v. California*, 283 U.S. 423 (1931). The common and unbroken theme is that states may not directly regulate the federal government.

**2.** There should be no serious dispute that the No Vigilantes Act directly regulates the federal government. *See Regulate*, Black's Law Dictionary (12th ed. 2024) (defining "regulate" as "[t]o control (an activity or process) esp. through the implementation of rules"). Indeed, the statute sets forth a detailed regulatory scheme. It requires federal officers to "visibly display identification," dictates the required contents of that identification, provides a comprehensive list of narrowly drawn exceptions to that requirement, prescribes criminal penalties for noncompliance, and prescribes a safe harbor if a federal agency has adopted a policy that mirrors the statute's substantive provisions. And that regulation is "direct"; it applies to the federal government and its employees, not merely to third parties who interface with the federal government. *See* Mot. 12-13.

**3.** California does not really contest that it seeks to regulate the federal government but urges that such regulation is permissible if it does not impose "substantial burdens on federal operations." Opp'n 21. But having another sovereign purport to control federal operations is contrary to the constitutional design, and courts need not go further to assess the degree of burden. As this Court has expressly

recognized (in discussing state laws that discriminate against the federal government), there is no "de minimis exception to the doctrine of intergovernmental immunity." *United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019). And *McCulloch* as well as the other Supreme Court cases discussed above reflect a basic and categorical prohibition, not fact-bound assessments of whether the particular state regulation at issue would be substantially burdensome (whatever that might mean).

Accordingly, this Court did not ask in *United States v. City of Arcata* whether California's ban on military recruitment of minors substantially burdened federal operations. Indeed, the California law in that case would not have burdened federal operations *at all* if federal law already imposed the same requirements, but this Court repeatedly stated that it would make no difference if the state law simply replicated federal requirements. 629 F.3d 986, 991-92 (9th Cir. 2010).

Unable to identify any case in which a state has been allowed to do what it attempts here, California points to various inapposite cases. Like the district court, it principally cites decisions involving federal contractors and other non-federal parties. Opp'n 20-22 (discussing *California*, *GEO Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) (en banc), and *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839-40 (9th Cir. 2014)). But those cases merely underscore the point by operating on the premise that direct regulation of federal operations is impermissible. When the

4

federal government is not itself the subject of the regulation, determining whether regulation of a contractor amounts to regulation of the federal government requires a functional analysis of the effect of the state regulation on federal operations. *See, e.g.*, *Boeing*, 768 F.3d at 840 (holding that because "[t]he state law replaces the federal cleanup standards that Boeing has to meet to discharge its contractual obligations to DOE with the standards chosen by the state," regulation of a contractor interfered with the federal government's operations). But no such inquiry is needed when the federal government is the *subject* of the state regulation. Again, multiple cases on which California relies make that distinction *expressly*. *See California*, 921 F.3d at 880; *GEO Grp.*, 50 F.4th at 750 ("Private contractors do not stand on the same footing as the federal government, so states can impose many laws on federal contractors that they could not apply to the federal government itself.").

Other cases on which California relies are plainly inapt because they involve congressional authorization. In *Hancock*, the Supreme Court did not hold that states retain authority under the Constitution to "regulate the amount of pollutants which [a] federal installation[] may discharge,'" Opp'n 20 (alterations in original) (quoting 426 U.S. at 180), but rather that the Clean Air Act authorized such state regulation, 426 U.S. at 180-81. Similarly, claims based on state tort law proceed because "Congress has entered the field and expressly bound the federal government to accept liability under state tort law on the same terms as a 'private individual.'"

*Martin v. United States*, 605 U.S. 395, 412 (2025) (quoting 28 U.S.C. § 2674); *see also Hernandez v. Mesa*, 589 U.S. 93, 111 (2020) (discussing Federal Tort Claims Act). There is no argument here that Congress directed federal law-enforcement officers to accept criminal prosecution under state law for not following state requirements regarding their official duties.

California also asserts that its identification requirements are "general rules that might affect incidentally the mode of carrying out the employment—as, for instance, a statute or ordinance regulating the mode of turning at the corners of streets." *Johnson*, 254 U.S. at 56. Even if such an exception exists—the issue does not arise because the federal government directs its officers to follow such laws, and the Supreme Court merely *reserved* rather than decided this question, *see id.* ("[i]t very well may be…")—it is extraordinarily narrow, only applies "when the United States has not spoken," and does not extend even to routine requirements to obtain a driver's license, as *Johnson* itself held. *Id.* at 55. Indeed, *Johnson* noted that "even the most unquestionable and most universally applicable of state laws"—including state *murder* laws—"will not be allowed to control the conduct of a marshal of the United States acting under and in pursuance of the laws of the United States." *Id.* at 56-57. Moreover, as the language of *Johnson* makes clear, such an exception would *at most* apply to truly general laws—such as speed limits—that apply across the board and only sweep in federal officials by happenstance. By contrast, the express

6

text of the state enactment here regulates federal officers when they are acting as federal officers (and its entire point is to do so).

Finally, California cites the Fifth Circuit's divided decision in *Texas v. DHS*, 123 F.4th 186 (5th Cir. 2024), holding that the APA waived sovereign immunity for a suit seeking to enjoin the government's cutting of concertina wire fence that Texas placed along its border with Mexico, based on state tort claims for conversion and trespass to chattels. Even if this Court were inclined to follow that erroneous decision—as opposed to the Supreme Court decision to vacate a previous injunction in that case the only time the issues were presented to that Court, *DHS v. Texas*, 144 S. Ct. 715 (2024)—the Fifth Circuit's faulty analysis rested principally on its view that Texas was "seeking, not to 'regulate' Border Patrol, but only to safeguard its own property." *Texas*, 123 F.4th at 192; *id.* at 205 ("Texas is acting as a proprietor, not a regulator.").[1] That is not the case here because there is no property interest involved.

**4.** California's theory would also mean that all 50 states could directly regulate federal operations on a limitless range of subjects—e.g., the weapons agents carry, when they can use them, uniform requirements, use of K9 teams, investigative practices, as well as an even broader range of non-law-enforcement areas—subject

---

[1] After the change in Administration, the United States decided not to seek further review of the Fifth Circuit decision relied on by California.

to fact-bound assessments of whether the regulation substantially burdens federal operations. Mot. 17. California does not deny this and simply asserts that if the federal government made a sufficient showing of burden in a particular case, the immunity analysis "could very well" be different. Opp'n 24. And California goes further, suggesting that even some direct state regulation that concededly does impose substantial burdens on the federal government might be permissible if, in a court's judgment, the state's interests in applying its regulation was more compelling. Opp'n 28. This is not remotely the law.

This case underscores why such an inquiry is not permissible. California contends that "the federal government has not alleged—let alone substantiated—any such burden." Opp'n 24. But the United States explained, through detailed declarations from four different agencies, significant threats that necessitate personal-identity protections. A31-61. Federal officers have been doxxed, threatened, followed to their hotels, and made the subject of bounties. Mot. 18-20.

California's only argument in response is that the federal government can comply by displaying the officer's agency and badge number rather than the officer's name. Opp'n 24. This was not the district court's theory. That court reasoned that, since the harms the United States alleged were the result of criminal behavior, the California statutes could not be regarded as a cause of those harms (a preposterous conclusion not even California squarely defends)—and it held that *both* the

8

identification requirements and the masking ban likely fell within the state's regulatory authority. In any event, displaying federal officers' agency affiliations and badge numbers would still facilitate the harm the federal government is trying to prevent, by enabling activists to, among other things, follow them to their hotels, and otherwise engage in harassment and intimidation.

It would also impair federal operations. ICE and other federal agencies routinely conduct investigations in plainclothes and otherwise conceal their agency status to, among other things, conduct surveillance, avoid alerting targets, and meet with confidential informants. Mot. 20. California responds with non-sequiturs. California states that "SB 805 does not require ICE or any other law enforcement agency to use marked vehicles or provide advance notice or warning of their operations to the public." Opp'n 25. But it does require them to visibly display their law enforcement identification when performing their enforcement duties (which as a practical matter of course does provide a form of warning and notice). California contends that "federal regulations already require immigration officers effectuating an arrest to identify themselves as immigration officers as soon as it is practicable to do so." *Id.* Under *Arcata* this is irrelevant, 629 F.3d at 991-92, but California's law is also not limited to requiring display of identification when federal officers make arrests.

California also states that the No Vigilantes Act provides a safe harbor if the federal government adopts a "policy memorializing the statute's identification requirements," and notes that the federal government did not seek an injunction pending appeal of those provisions. Opp'n 28. It is unclear why California believes that the possibility that its enactment will compel the creation of a new policy governing federal law-enforcement officials helps its argument (particularly since these provisions require a policy to parrot the statute's identification requirement and its specific exceptions). The federal government will promulgate no such policies, but did not seek an injunction pending appeal of the provisions requiring it to do so because California lacks a mechanism to enforce them against the federal government. The provision at issue in this motion, by contrast, threatens state prosecutions of individual federal officers.

California also makes policy arguments, contending that "[t]ransparent, accountable policing is a cornerstone of American democracy," Opp'n 8, and touting a supposed "longstanding tradition of federal law enforcement agents identifying themselves," Opp'n 12. But federal law-enforcement agents have not traditionally faced anything like the extraordinary hostility they now face attempting to enforce federal immigration law in California. And California does not deny that there is also a long tradition of plainclothes operations in certain circumstances. The issue is

10

who decides when federal officers must identify themselves, and there can only be one answer to that question.

**B. The remaining factors support an injunction.**

Irreparable harm necessarily results from enforcement of a law that regulates the United States in violation of intergovernmental immunity. As the district court recognized, A25, this Court's decision in *California* does not state otherwise. The Court there stated that applying a presumption of irreparable harm "was consistent with [the Ninth Circuit's] previous recognition that preventing a violation of the Supremacy Clause serves the public interest." 921 F.3d at 893.

Although this presumptive irreparable harm is sufficient, there is more here. Federal officers face a credible threat of prosecution, as the district court acknowledged, and California conspicuously declines to disclaim any intent to prosecute. That independently qualifies as irreparable harm. Mot. 23. And it is an obvious affront to the United States' sovereignty when another sovereign asserts authority to arrest and criminally prosecute federal employees based on a policy disagreement with the federal government about how the federal government conducts its operations. Nor does California address the point that it is not in the public interest to allow California to escalate its dispute with the federal government by targeting its officials for arrest and prosecution before this Court can determine the statute's legality.

On the other side of the ledger, California asserts that identification is necessary in response to a handful of incidents in which criminals have impersonated federal law-enforcement officials, and so detained individuals will know if they can lawfully resist. Opp'n 28-29. But putting aside that impersonating federal officials is illegal (so such harms would not count under the district court's framework), federal officials can (and often will) provide proof of their law-enforcement status when making arrests and detentions, thereby conveying that targets may not lawfully resist (and again, California's identification requirements do not apply merely when law enforcement makes arrests and detentions). And of course, those already intent on breaking the law by impersonating federal officers can easily wear fake badges. The relevant point is that decisions about when federal law-enforcement officers should or should not identify themselves is a question for the federal government.

Finally, California is wrong to contend that its supposed interest in applying its laws mean that a facial challenge is improper—an argument not even the district court embraced, *see* A9-10. Section 10 as applied to the federal government is invalid in all applications because it is direct regulation Congress has not authorized.

## CONCLUSION

The Court should grant an injunction pending appeal.

12

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY

*/s/ Andrew M. Bernie*
ANDREW M. BERNIE
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3511*
  *andrew.bernie@usdoj.gov*

February 2026

13

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) and Local Rules 27-1(d) and 32-3 because it contains 2,789 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman font.

*/s/ Andrew M. Bernie*
ANDREW M. BERNIE