No. 26-926

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

STATE OF CALIFORNIA; GAVIN NEWSOM, *in his official capacity as Governor of California*; and ROBERT BONTA, *in his official capacity as Attorney General of California*

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California
No. 2:25-cv-10999
The Honorable Christina A. Snyder

## BRIEF OF *AMICI CURIAE* LOCAL GOVERNMENTS AND LOCAL GOVERNMENT LEADERS IN SUPPORT OF DEFENDANTS-APPELLEES

JENNY MA
JEAN LARSEN
CHRISTOPHER PEÑA
**PUBLIC RIGHTS PROJECT**
490 43rd Street, #115
Oakland, CA 94609
(510) 738-6788
jenny.ma@publicrightsproject.org
*Attorneys for Amici Curiae*

**TABLE OF CONTENTS**

STATEMENT OF INTEREST ................................................................... 1

SUMMARY OF ARGUMENT .................................................................. 2

ARGUMENT ............................................................................................ 3

I. *Amici* Have Long Recognized That Identifiable Law Enforcement Is Essential to Public Safety .......................................... 5

II. Anonymous Federal Agents Who Do Not Identify Themselves While On Duty Have Generated Widespread Confusion and Fear ....................................................................................................... 8

III. Agent Anonymity Undermines Public Safety and Enables Criminal Impersonation ..................................................................... 11

IV. Agent Anonymity Imposes Concrete, Measurable Harms on *Amici* Jurisdictions and Their Residents .......................................... 13

V. Agent Anonymity Curtails Residents' Ability to Seek Redress for Serious Violations of Their Constitutional Rights ..................... 16

CONCLUSION ........................................................................................ 18

ADDITIONAL COUNSEL ..................................................................... 19

Appendix A - List of *Amici Curiae* ...................................................... 22

# TABLE OF AUTHORITIES

### CASES

*Johnson v. Maryland*,
254 U.S. 51 (1920).................................................................................3

*Tafflin v. Levitt*,
493 U.S. 455 (1990)..............................................................................3

### FEDERAL CONSTITUTIONAL PROVISIONS

U.S. Const. amend. X..............................................................................4

### STATE CONSTITUTIONAL PROVISIONS

Cal. Const., art. XI, §§ 5, 7 ...................................................................4

Ill. Const., art. VII, § 6..........................................................................4

N.M. Const., art. 10, § 6.........................................................................4

### STATE STATUTES

S.B. 805, 2025-2026 Reg. Sess., ch. 126, 2025 Cal. Stat. ................................1

### LEGISLATIVE MATERIALS

*Hearing on S.B. 627 Before the Senate Standing Committee on Public Safety*, 2025-2026 Reg. Sess. (Cal. 2025).....................................................15

S.B. 264, 2025-2026 Reg. Sess. (Cal. 2025)....................................................12

### OTHER AUTHORITIES

ABC 30, *See 2 men arrested for allegedly impersonating ICE officers and harassing shoppers in Fresno* (Feb. 27, 2025) ...........................................11

Alex Stone, *Los Angeles police responded to a kidnapping call. But instead found an ICE operation*, ABC News (June 25, 2025) ..............................13

Allie Preston, *Masked and Unidentifiable: The Risks of Federal Law Enforcement Operating Without Identification*, Ctr. for Am. Progress (Aug. 28, 2025) .........................................................................................10

Anita Chabria, *Homeland Security says it doesn't detain citizens. These brave Californians prove it has* (Dec. 12, 2025) ...........................................16

Arturo Flores, *Huntington Park mayor directs police to enforce ICE agents' self-identification*, KTLA (June 21, 2025) .......................................9

Bay City News Service, *Regional: Local Cities, Counties Launch Regional Fund For Families Impacted By Ice Raids*, SF Gate (Sept. 19, 2025) ..........9

City of Minneapolis, *Preliminary Impact Assessment & Relief Needs Overview* (Feb. 2026)................................................................................15, 16

Dell Cameron & Caroline Haskins, *FBI Warns of Criminals Posing as ICE, Urges Agents to ID Themselves*, Wired (Nov. 4, 2025) ......................12

Denver, Colo., Rev. Mun. Code art. X, §§ 28-300–28-303 (2026) ...................8

*Department Notice: Response to Incidents Involving Federal Civil Immigration Enforcement*, San Francisco Police Dep't (Aug. 26, 2025)....14

*Face Coverings and Police-Community Engagement*, Int'l Ass'n of Chiefs of Police, (Nov. 3, 2020)................................................................................5

Helen Jeong, *DHS arrests over 10,000 undocumented immigrants, Sec. Noem says*, NBC Los Angeles (Dec. 12, 2025)...........................................16

Helen Jeong, *Growing calls for police to show ID and face amid rise in ICE impersonators*, NBC Los Angeles (June 23, 2025)............................8, 9

J. David McSwane and Hanna Allam, *Unfettered and Unaccountable: How Trump Is Building a Violent, Shadowy Federal Police Force*, ProPublica (Oct. 18, 2025).................................................................6, 17

Jacob Sisneros, *Amid string of raids, immigration agents chase gardener, tackle him in front of LBPD officers, witnesses say*, Long Beach Post News (Nov. 21, 2025)..............................................................................10

Jared Bennett, *LAPD chief instructs officers to verify identity of federal immigration agents*, LAist (July 3, 2025).....................................................14

Jose Olivares & Lisa Dsjardins, *Rise of ICE agents wearing masks creates opportunity for imposters to conduct crimes*, PBS News Hour (July 7, 2025) ...........................................................................................12

iii

Joseph Geha, *San Jose Aims to Thwart ICE With New Policies on Masks and Public Properties*, KQED (Nov. 3, 2025)................................................7

Josh Campbell, *As ICE escalates its tactics, are federal agents truly 'untouchable' in the eyes of the law?* CNN.com (Nov. 15, 2025).........16, 17

Joyce Chu, *San Jose moves to block ICE from city properties, tighten immigrant protection*, Local News Matters (Oct. 30, 2025).........................7

Laurie Perez, *Southern California family says off-duty agent detained and held their teenage son at gunpoint,* CBS News (Nov. 18, 2025)................13

Law Enf't Immigr. Task Force, *Best Practices for Law Enforcement to Preserve Community Trust in the Context of Increased Immigration Enforcement* (Dec. 23, 2024).............................................................................6

*Law Enforcement Best Practices: Lessons Learned from the Field*, Cmty. Oriented Policing Servs., U.S. Dep't of Just. (2019).....................................5

Libor Jany & Hailey Wang, *As ICE raids surged this summer, emergency calls to LAPD plummeted*, LA Times (Sept. 20, 2025) ...............................15

Los Angeles County Code, Ch. 13.01 (Nov. 12, 2025) ....................................8

Makenna Sievertson, *'No Vigilantes Act,'* LAist (June 23, 2025)...................10

Michael Lozano, *Behind the masks: Who are the people rounding up immigrants in California?* CalMatters (July 17, 2025) ................................7

Nathan Solis & Richard Winton, *'Who are these people?' Masked immigration agents challenge local police, sow fear in L.A.*, LA Times (June 24, 2025)...............................................................................................9, 12

Rachel Posner, Emily Bazelon, Matthew Purdy, *A View From Inside Trump's D.H.S.*, NYTimes, (Apr. 14, 2026)................................................7

Ray Sanchez & Alisha Ebrahimji, *Masked ICE officers: The new calling card of the Trump administration's immigration crackdown*, CNN.com (June 21, 2025)...........................................................................................6

WTVC NewsChannel 9, *LIVE: President Trump addresses the federal crackdown on crime in Washington, D.C.* (YouTube, Aug. 11, 2025) .......17

iv

**STATEMENT OF INTEREST**

*Amici* are 28 local governments and local government leaders from across the nation.[1] *Amici* write in support of Defendants-Appellees' defense of a California statute that has a simple purpose: to ensure that all law enforcement officers are identifiable.

The challenged statute, the No Vigilantes Act, S.B. 805, 2025-2026 Reg. Sess., ch. 126, 2025 Cal. Stat., requires law enforcement officers at the local, state, and federal levels to visibly identify their agency, and name or badge number. This law codifies longstanding and common-sense practices already utilized by nearly all local police departments and federal agents alike. It should be of no controversy for California and *amici* jurisdictions to mandate that immigration enforcement agents operating within our borders don the same basic identification that we require our own local officers to display.

*Amici* share a common interest and responsibility in protecting the general welfare of all of our residents and creating safer communities. Anonymity in law enforcement decreases public safety, reduces public trust in government, and does nothing to further the public interest. Several *amici* jurisdictions, targeted themselves

---

[1] No party or party's counsel authored this brief in whole or in part and no party or party's counsel contributed money intended to fund preparation or submission of this brief. A list of all *amici* is provided at Appendix A. All parties have consented to the filing of this brief.

1

with enhanced federal immigration enforcement, have directly experienced the destabilization described in this brief. *Amici* also have an interest in ensuring that the federal Government, no matter who or what party is at the head, does not transgress upon local and state sovereignty. *Amici,* accordingly, uniquely understand that the challenged identification requirement is both lawful and, at its core, the bare minimum for ensuring accountability and public trust in law enforcement.

## SUMMARY OF ARGUMENT

Law enforcement officers should be identifiable. The Government's vehement opposition to this basic requirement departs from law enforcement norms to which all local jurisdictions—and, indeed, until recently the federal Government—adhere. By deploying unidentifiable agents into communities, the Government predictably undermines public safety and security, causes widespread confusion and fear, and reduces trust between residents and local police. The Government's recent practice of sending unidentified officers into communities has also led to a proliferation of criminal impersonators posing as federal immigration agents and targeting immigrants. Finally, when unidentifiable federal agents descend upon *amici*'s jurisdictions, their impact reverberates beyond even the immediate fear they provoke, tolling long-term costs on our communities—from strained local law enforcement resources to increased healthcare avoidance by residents and disruptions in our schools.

2

The State of California's policy mandate could not be more minimal and common-sense: that all law enforcement officers—*local and federal alike*—wear visible identification that includes their agency name and either a name or badge number. Yet rather than complying with this sensible measure, the Government prefers to surge into local communities under conditions of anonymity that promote unaccountability.

As the local governments and leaders who, having built public trust over decades, must address the chaos caused by such federal immigration operations and restore the shattered trust of our communities, *amici* urge this Court to rule in favor of Defendants-Appellees and uphold California's lawful and reasonable identification requirement.

## ARGUMENT

This Court granted an injunction pending appeal based on a preliminary assessment of the Government's Supremacy Clause claim, thus allowing the Government to continue to send anonymous federal agents, without uniforms or identifying badges, into our communities. As local governments charged with regulating and protecting the welfare of our residents, *amici* contend that the

3

Government should not be given such carte blanche.[2] Instead, the federalist structure is enshrined in the Tenth Amendment: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. While the Government thus enjoys general federal supremacy, the Constitution does not grant it unchecked and unfettered authority to disregard core tenets of the state's police power.[3]

The Government's unprecedented deployment of unidentifiable agents into local communities, largely as part of immigration enforcement surges, threatens the essential trust underlying public safety. The presence of federal officers who not only lack visible identification, but often also work in plainclothes and obscure their faces with masks and other coverings, engenders confusion and fear, sows community distrust in law enforcement, heightens danger from criminal impersonation of law enforcement, and creates concrete costs and harms for local jurisdictions. When law enforcement fails to wear identification, U.S. citizens and

---

[2] *See Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) (stating "under our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause"); see also *Johnson v. Maryland*, 254 U.S. 51, 56 (1920) (holding that, even where there may be a limit on state power, "an employee of the United States does not secure a general immunity from state law while acting in the course of his employment").

[3] States' police power manifests in significant part through county and municipal governments, which are the primary providers of law enforcement and public safety. *See e.g.*, Cal. Const., art. XI, §§ 5, 7; Ill. Const., art. VII, § 6; N.M. Const., art. 10, § 6.

non-citizens alike who, without process, have been assaulted, punched, thrown to the ground, injured, shackled, and held against their will cannot know the identity of the offending officer or agency—severely limiting their ability to seek redress for these violations of their rights. For these reasons, and those ably offered by Defendants-Appellees, this Court should affirm the District Court's decision.

## I.    *Amici* Have Long Recognized That Identifiable Law Enforcement Is Essential to Public Safety

Public safety in *amici*'s jurisdictions depends on trust between residents and local law enforcement. That trust is built through transparency, accountability, and human interaction—principles long reflected in policies requiring officers to wear uniforms, badges, or other clear identification while on duty, with limited exceptions.[4] Critically, evidence demonstrates that community trust erodes when officers conceal their identities and operate anonymously.[5] When community members do not trust law enforcement, they tend to underreport crimes, avoid

---

[4] *See, e.g.*, *Law Enforcement Best Practices: Lessons Learned from the Field*, Cmty. Oriented Policing Servs., U.S. Dep't of Just. at 6, 10–15 (2019), https://perma.cc/3VVB-WTFB.

[5] *See Face Coverings and Police-Community Engagement*, Int'l Ass'n of Chiefs of Police, (Nov. 3, 2020), https://perma.cc/V8MC-DHKW (advising police officers that members of the public "may be intimidated or fearful of officers wearing a face covering, which may heighten their defensive reactions," and advising police officers interacting with members of the public during COVID-19 to remove their face masks when introducing themselves, to maintain public trust).

5

assisting with investigations, and do not seek police assistance when needed.[6] When cooperation declines in this way due to lack of trust, public safety suffers.

In fact, until this past year, the longstanding principles of law enforcement transparency were shared and practiced by federal enforcement agencies and *amici* alike.[7] Yet, since early 2025, communities across California have witnessed a deluge of anonymous agents jumping out of unmarked vans, refusing to identify themselves to the public, and rounding up unsuspecting residents.[8] These federal agents have tackled the elderly, arrested children, shot at unarmed families, broken car windows to snatch people out of their cars, and indiscriminately arrested residents—both citizens and non-citizens —all without identifying themselves by first or last names,

---

[6] *See* Law Enf't Immigr. Task Force, *Best Practices for Law Enforcement to Preserve Community Trust in the Context of Increased Immigration Enforcement* (Dec. 23, 2024), https://perma.cc/BRR7-MH3P ("Just as distrust undermines law enforcement's relationship with immigrant communities, this fear can deter entire immigrant communities from seeking help and reporting crimes.").

[7] *See, e.g.*, *id.*; *see also* Ray Sanchez & Alisha Ebrahimji, *Masked ICE officers: The new calling card of the Trump administration's immigration crackdown*, CNN.com (June 21, 2025), https://perma.cc/QF86-2U4R (former senior ICE official, Scott Schuchart, remarking, "the way that [federal immigration agents] are carrying on without any visible identification—even that they're law enforcement, much less what agency they're with—it really is pretty unprecedented to see at this scale, and…very dangerous").

[8] *See, e.g.*, J. David McSwane and Hanna Allam, *Unfettered and Unaccountable: How Trump Is Building a Violent, Shadowy Federal Police Force,* ProPublica (Oct. 18, 2025), https://perma.cc/2PR3-L6V9.

badge number, and often without even identifying the agency they work for.[9]

Unsurprisingly, the overall sense of public safety in *amici*'s communities has

markedly diminished because of these actions.

The alarming and unprecedented increase in unidentified federal agents

ambushing residents have led local jurisdictions in California to evaluate the same

policy concerns that drove Defendants-Appellees to pass the challenged Act.

California localities, including some *amici*, have passed legislation requiring law

enforcement to clearly identify themselves. Many such local laws apply equally to

local police and to federal agents. For instance, the City of San Jose now requires

visible identification for "any officer of a local, state, or federal law enforcement

agency."[10] Los Angeles County likewise amended its code to require "*all* law

enforcement officers operating within Los Angeles County, to wear visible

---

[9] In addition to ICE agents, officers from the Department of Homeland Security (DHS), Customs and Border Patrol (CBP), the Federal Bureau of Investigation (FBI), Drug Enforcement Administration (DEA), and the Bureau of Alcohol Tobacco and Firearms (ATF), entered cities across California. *See* Michael Lozano, *Behind the masks: Who are the people rounding up immigrants in California?* CalMatters (July 17, 2025), https://perma.cc/5V2J-X433; *see also* Rachel Posner, Emily Bazelon, Matthew Purdy, *A View From Inside Trump's D.H.S.*, NYTimes, (Apr. 14, 2026), https://perma.cc/K8UA-LYUD.

[10] *See* Joseph Geha, *San Jose Aims to Thwart ICE With New Policies on Masks and Public Properties*, KQED (Nov. 3, 2025), https://perma.cc/EAN6-B3V7. The author of the San Jose ordinance, Councilman Peter Ortiz, cited "San Jose's commitment to community safety, accountability and the protection of immigrant and working-class families across the city" as a primary driver for the legislation. *Id; see also* Joyce Chu, *San Jose moves to block ICE from city properties, tighten immigrant protection*, Local News Matters (Oct. 30, 2025), https://perma.cc/HS3C-49V3.

identification and agency affiliation."[11] These local enactments evidence the shared belief among local governments that community safety requires all law enforcement operating in our communities to be identifiable.[12]

## II. Anonymous Federal Agents Who Do Not Identify Themselves While on Duty Have Generated Widespread Confusion and Fear

Many California residents have experienced confusion regarding the identity of federal law enforcement in their communities, and elected officials have given voice to their concerns. Los Angeles Mayor Karen Bass has observed that because federal law enforcement has adopted a practice of not identifying themselves to the public, no one knows the identities of federal agents who have taken people into custody.[13] Discussing the overall climate of confusion and fear created by the surge of anonymous immigration agents who are using aggressive and indiscriminate enforcement tactics to the region, San Jose Mayor Matt Mahan remarked, "At town halls and community meetings, I've heard from parents who are afraid to walk their

---

[11] *See* Los Angeles County Code, Ch. 13.01 (Nov. 12, 2025), https://perma.cc/UV8F-TSNU.

[12] *See also, e.g.,* Denver, Colo., Rev. Mun. Code art. X, §§ 28-300–28-303 (2026) ("[u]niformed law enforcement personnel, shall clearly identify themselves by displaying their name, badge or identification number"), https://perma.cc/QU56-S7ED.

[13] *See* Helen Jeong, *Growing calls for police to show ID and face amid rise in ICE impersonators*, NBC Los Angeles (June 23, 2025), https://perma.cc/9L7U-U7E4 ("Who are these people?... We're not sure who these armed men are. They show up without uniforms…They refuse to give ID, they're driving regular cars with tinted windows and in some cases, out of state license plates.").

children to school, neighbors afraid to go to the grocery store, afraid to go to work, residents afraid that even if they are here legally, they could still be targeted."[14] Similarly, the Mayor of Huntington voiced concern that, "Men dressed in tactical gear, operating unmarked vehicles without displaying credentials or agency affiliation, have infiltrated our neighborhoods in direct violation of our community's values, civil rights, and the basic principles of due process."[15] Other local officials too, including the Mayor of Pasadena,[16] and a California State Senator,[17] have similarly expressed grave concerns about the increasing threats to public safety and fear sewn by federal immigration enforcement operations carried out by anonymous officers.

---

[14] *See* Bay City News Service, *Regional: Local Cities, Counties Launch Regional Fund For Families Impacted By Ice Raids*, SF Gate (Sept. 19, 2025), https://perma.cc/28QY-SN2N.

[15] *See* Arturo Flores, *Huntington Park mayor directs police to enforce ICE agents' self-identification*, KTLA (June 21, 2025) ("Men dressed in tactical gear, operating unmarked vehicles without displaying credentials or agency affiliation, have infiltrated our neighborhoods in direct violation of our community's values, civil rights, and the basic principles of due process"), https://perma.cc/C5RQ-7NUD.

[16] *See* Nathan Solis & Richard Winton, *'Who are these people?' Masked immigration agents challenge local police, sow fear in L.A.*, LA Times (June 24, 2025), https://perma.cc/PK9Y-MWZL.

[17] *See* Jeong, *supra* n.13 (quoting State Senator Sasha Renee Perez, "[i]t's clear that we need to protect Californians, and that means finding out who is actually conducting immigration enforcement operations on our streets and holding them accountable").

Apart from creating general confusion, which itself sows fear, when non-uniformed federal agents conduct immigration operations without badges there is an increased likelihood of their actions looking like criminal activity. The consequences are both dire and numerous: anonymity increases confusion, which decreases the legitimacy and endangers the safety of local law enforcement and federal agents alike by escalating the potential for conflict and violence. In Pasadena, for example, a resident photographing an unmarked vehicle was confronted at gunpoint by a man wearing a police vest but no other identification; to this day, it remains unclear whether the individual was a federal agent or a vigilante.[18]

And since federal agents typically do not notify local law enforcement when they are operating in any given community, the risk to officers is exacerbated.[19] When these encounters involve use of force or weapons, the possibility for violence and tragedy further increases.[20] The Government's practice places ICE and other federal officers at risk by preventing state and local officers and community members from readily identifying them as law enforcement and interacting with

---

[18] *See* Makenna Sievertson, *'No Vigilantes Act,'* LAist (June 23, 2025), https://perma.cc/WEQ8-PMGS.

[19] *See* Allie Preston, *Masked and Unidentifiable: The Risks of Federal Law Enforcement Operating Without Identification*, Ctr. for Am. Progress (Aug. 28, 2025), https://perma.cc/4RYD-7CWN.

[20] *Id.*; *see also* Jacob Sisneros, *Amid string of raids, immigration agents chase gardener, tackle him in front of LBPD officers, witnesses say*, Long Beach Post News (Nov. 21, 2025), https://perma.cc/AN7Y-9H7Z.

them accordingly, increasing the chances of violent confrontations. Federal law enforcement should be held to the same standards of good policing as local officers to ensure that policing is safe, accountable, and transparent—removing anonymity is the bare minimum required to achieve those goals.

## III. Agent Anonymity Undermines Public Safety and Enables Criminal Impersonation

The presence of unidentifiable federal officers not only stokes public confusion and fear, but also makes policing more challenging and dangerous. Specifically, the Government's tactics make everyone less safe—from residents to local law enforcement to federal agents—because true lawbreakers take advantage of the fact that unidentified officers carrying guns, breaking into cars, and chasing after people appear indistinguishable from criminals.

Indeed, anonymous policing has spurred the rise of dangerous impersonations and vigilantes—and ill-intentioned wrongdoers have exploited this moment. In California, individuals posing as ICE agents have harassed businesses and threatened residents with firearms. In Fresno, for example, two men were arrested for impersonating ICE agents after they harassed customers at more than ten local businesses.[21] Similarly, police arrested a man in Huntington Park suspected of posing as an ICE agent when he was found with an unmarked vehicle, a loaded

---

[21] *See* ABC 30, *See 2 men arrested for allegedly impersonating ICE officers and harassing shoppers in Fresno* (Feb. 27, 2025), https://perma.cc/8MVK-JYXN.

handgun, and a list of CBP radio codes.[22] In other areas of the country, criminals impersonating ICE agents have sexually assaulted, robbed, and kidnapped victims.[23] This targeting of vulnerable populations is not incidental; it is a predictable consequence of anonymous policing.

Even the Federal Bureau of Investigation (FBI) recognizes this risk, warning in its October 2025 bulletin to law enforcement agencies, that criminals are posing as ICE agents and targeting victims.[24] Accordingly, the FBI urged federal officers to clearly identify themselves during interactions with civilians.[25] The problem of officer impersonation nationally is so acute that state legislators have introduced bills to clarify laws related to impersonation and increase penalties for impersonating an officer.[26]

So long as federal officers conceal their identities, they will continue to put *amici*'s residents at risk, reducing overall public safety. Without common-sense

---

[22] *See* Nathan Solis & Richard Winton, *'Who are these people?' Masked immigration agents challenge local police, sow fear in L.A.*, LA Times (June 24, 2025), https://perma.cc/PK9Y-MWZL.

[23] *See* Jose Olivares & Lisa Dsjardins, *Rise of ICE agents wearing masks creates opportunity for imposters to conduct crimes*, PBS News Hour (July 7, 2025), https://perma.cc/B74E-ZTBC.

[24] *See* Dell Cameron & Caroline Haskins, *FBI Warns of Criminals Posing as ICE, Urges Agents to ID Themselves*, Wired (Nov. 4, 2025), https://perma.cc/C9Q3-PETM.

[25] *Id.*

[26] *See, e.g., Impersonation of a peace officer or firefighter during a state of emergency or local emergency*, S.B. 264, 2025-2026 Reg. Sess. (Cal. 2025).

identification requirements like those set forth in the Act, *amici* will continue to bear the costs of preventable escalation and the increasing trend of vigilantes and criminal impersonation in our communities.

## IV. Agent Anonymity Imposes Concrete, Measurable Harms on *Amici* Jurisdictions and Their Residents

*Amici* suffer short and long-term harms when federal officers conduct immigration enforcement activities without identification. To begin, local resources are diverted because local police departments must respond to increased calls from residents concerned about the presence of unknown, armed individuals in their communities. Local law enforcement must further respond to and investigate reports of unidentified federal officers committing alleged crimes as they interact with the public. Since the federal government adopted the practice of anonymity during immigration operations, local law enforcement across California jurisdictions have responded to 911 calls reporting kidnapping or hit-and-run accidents—only to discover that these emergencies involve actions by federal immigration agents.[27] For example, in Riverside, the police were called last November after a purported off-duty ICE agent held a child at gunpoint.[28]

---

[27] *See, e.g.*, Alex Stone, *Los Angeles police responded to a kidnapping call. But instead found an ICE operation*, ABC News (June 25, 2025), https://perma.cc/J2C5-ME2Q.

[28] *See* Laurie Perez, *Southern California family says off-duty agent detained and held their teenage son at gunpoint,* CBS News (Nov. 18, 2025), https://perma.cc/UHJ3-LBEJ.

13

Local law enforcement resources are also being diverted towards creating and implementing additional protocols and training in response to federal agents' escalated tactics and break from prior agency policy of clearly identifying agents in the majority of circumstances. For example, the Los Angeles Police Department (LAPD) adopted protocols requiring officers responding to immigration enforcement activities to verify the credentials of the lead federal agent on the scene, and document those credentials with body-worn cameras.[29] Similarly, the San Francisco Police Department issued a Department Notice instructing officers that if they "encounter individuals who are *not readily identifiable* as federal agents, [they] should, when safe and practical to do so, attempt to verify the credentials of the on-scene federal lead-agent, supervisor, or agent in charge, and capture the verification process on [body-worn cameras]."[30] Each of these additional steps, necessitated by the current practice of federal immigration agents of operating without identification, requires more resources and training to execute.

Additionally, recent enforcement surges across the country, such as the consequential Operation Metro Surge in Minneapolis, teach that when residents associate law enforcement with fear and violence, serious and violent crimes go

---

[29] *See* Jared Bennett, *LAPD chief instructs officers to verify identity of federal immigration agents*, LAist (July 3, 2025), https://perma.cc/U6GF-PF9K.

[30] *See Department Notice: Response to Incidents Involving Federal Civil Immigration Enforcement*, San Francisco Police Dep't (Aug. 26, 2025), https://perma.cc/KQ9X-QP5W (emphasis in original).

14

unreported and unaddressed.[31] The same is true in California, and this reality harms *amici* and their residents. After immigration raids began in Los Angeles, LAPD calls for service fell 28 percent.[32] LAPD has been forced to expend resources to regain trust of residents: planning listening sessions, increasing outreach in immigrant neighborhoods, starting a citizens police academy for Spanish speakers, and meeting with faith and community leaders.[33] Similarly, as a result of aggressive immigration enforcement activity in the inland region of California, residents of that region started reporting crime—particularly domestic violence—directly to immigration hotlines run by nonprofit groups and community organizations because they did not feel safe calling police.[34] These ramifications endure even if ICE is ultimately drawn

---

[31] *See* City of Minneapolis, *Preliminary Impact Assessment & Relief Needs Overview* (Feb. 2026) ("Minneapolis Impact Assessment") (finding that "fear caused by Operation Metro Surge discourage[d] people from… reporting crimes…" and that "[m]any of these effects, such as individual and collective trauma experienced by a community terrorized by federal government agents purportedly sworn to protect them, along with the negative impact to trust in all government agencies such as law enforcement, will be long-lasting"), https://perma.cc/F867-P4C4.

[32] *See* Libor Jany & Hailey Wang, *As ICE raids surged this summer, emergency calls to LAPD plummeted*, LA Times (Sept. 20, 2025), https://perma.cc/K4CW-KJ5L.

[33] *Id.*

[34] *See Hearing on S.B. 627 Before the Senate Standing Committee on Public Safety*, 2025-2026 Reg. Sess. (Cal. 2025) (statement of Hector Pereira, Inland Coalition for Immigrant Justice).

back, inflicting lasting damage on public trust in law enforcement that local governments like *amici* must painstakingly rebuild.[35]

## V. Agent Anonymity Curtails Residents' Ability to Seek Redress for Serious Violations of Their Constitutional Rights

Finally, the anonymity of law enforcement personnel creates extreme obstacles to *amici*'s residents seeking relief for the hundreds of reported constitutional violations federal agents have committed in our jurisdictions. Without knowledge of agency affiliation, officers' names, or badge numbers, victims cannot identify responsible parties, locate detainees, or pursue legal remedies when their rights have been violated.[36]

According to DHS, more than 10,000 people have been arrested in California since the surge of immigration raids began in the State in the summer of 2025.[37] During these raids, unidentified federal officers threw unarmed, cooperative

---

[35] *See* Minneapolis Impact Assessment, *supra* n.31 (noting "[m]any of these effects, such as individual and collective trauma experienced by a community terrorized by federal government agents purportedly sworn to protect them, along with the negative impact to trust in all government agencies such as law enforcement, will be long-lasting and cannot be quantified," and that "[e]ven when the Surge ends,... Minneapolis will experience substantial long-term negative impacts on residents, community members and the city as a whole").

[36] *See* Josh Campbell, *As ICE escalates its tactics, are federal agents truly 'untouchable' in the eyes of the law?* CNN.com (Nov. 15, 2025), https://perma.cc/T6E5-D8X9.

[37] *See* Anita Chabria, *Homeland Security says it doesn't detain citizens. These brave Californians prove it has* (Dec. 12, 2025), https://perma.cc/W7VN-5J78; Helen Jeong, *DHS arrests over 10,000 undocumented immigrants, Sec. Noem says*, NBC Los Angeles (Dec. 12, 2025), https://perma.cc/A697-QFJS.

residents to the ground, choked and beat them, used tear gas and pepper spray, and then refused to administer medical care to treat officer-caused injuries.[38] To the extent these actions constitute violations of residents' right to be free from unreasonable search and seizure, and other constitutional harms, residents are entitled to pursue legal relief.

Federal agents, however, behave as though they cannot be held accountable for violating our community members' rights.[39] This is precisely because accountability *is* unlikely when residents cannot determine the identity of an offending agent.[40] Although the challenged Act requiring all law enforcement officers to identify themselves to the public will not entirely prevent constitutional violations from occurring, it will deter unlawful conduct and make meaningful

---

[38] *See* U.S. Senate, Permanent Subcommittee on Investigations, *Unchecked Authority: Examining the Trump Administration's Extrajudicial Immigration Detentions* at 5, 17, 19, 30, 32-33, 35-36, 47-48, 53-57 (Dec. 9, 2025), https://perma.cc/LTT9-S2DC.

[39] This lack of accountability is exacerbated under this Administration, because the Government and its law enforcement agencies foster impunity for federal officers. Reports indicate that federal officers face little risk of internal investigation for improper use of force, a perception reinforced by public statements from senior Administration officials. *See* McSwane & Allam, *supra* n.8; *see also* Campbell, *supra* n.36. Indeed, the President himself confirmed this, telling reporters that law enforcement was "allowed to do whatever the hell they want" when interacting with the public. *See* WTVC NewsChannel 9, *LIVE: President Trump addresses the federal crackdown on crime in Washington, D.C.* at 26:05 (YouTube, Aug. 11, 2025), https://perma.cc/79GA-DMJ5.

[40] *See* McSwane & Allam, *supra* n.8.

judicial review possible by restoring a minimum (and necessary) level of transparency and accountability.

## CONCLUSION

The identification requirement in the Act sagely codifies the fundamental premise that *all* law enforcement should be identifiable to the public when carrying out their duties, while countering the widespread confusion and related public harms that anonymous federal agents have inflicted and continue to inflict in local communities. For these reasons, *amici* respectfully request that this Court rule in favor of Defendants-Appellees and affirm the District Court's decision.

Respectfully submitted,

Dated: April 28, 2026

**PUBLIC RIGHTS PROJECT**

*s/ Jenny Ma*

JENNY MA
JEAN LARSEN
CHRISTOPHER PEÑA
**PUBLIC RIGHTS PROJECT**
490 43rd Street, #115
Oakland, CA 94609
(510) 738-6788

*Attorneys for Amici Curiae*

18

**ADDITIONAL COUNSEL**

YIBIN SHEN
City Attorney
2263 Santa Clara Avenue, Room 280
Alameda, CA 94501
*Attorney for the City of Alameda,
California*

ANDREA WEDDLE
Interim County Counsel
1221 Oak Street
Oakland, CA 94612
*Counsel for the County of Alameda,
California*

ROBERT MAGEE
Corporation Counsel
24 Eagle Street, Room 106
Albany, NY 12207
*Attorney for the City of Albany,
New York*

ATLEEN KAUR
City Attorney
Guy C. Larcom City Hall
301 East Huron, 3rd Floor
Ann Arbor, MI 48104
*Attorney for the City of Ann Arbor,
Michigan*

MICHAEL FIRESTONE
Corporation Counsel
One City Hall Square, Room 615
Boston, MA 02201
*Attorney for the City of Boston,
Massachusetts*

EMILY SMART WOERNER
City Solicitor
801 Plum Street, Room 214
Cincinnati, OH 45202
*Attorney for the City of Cincinnati,
Ohio*

ZACH KLEIN
City Attorney
77 North Front Street, 4th Floor
Columbus, OH 43215
*Attorney for the City of Columbus,
Ohio*

HEATHER S. BAKER
City Attorney
9770 Culver Boulevard
Culver City, CA 90232
*Attorney for the City of Culver City,
California*

ALEXANDRA B. RUGGIE
Corporation Counsel
909 Davis Street
Evanston, IL 60201
*Attorney for City of Evanston, Illinois*

DAWN A. MCINTOSH
City Attorney
411 West Ocean Boulevard,
9th Floor
Long Beach, CA 90802
*Attorney for the City of Long Beach,
California*

19

HYDEE FELDSTEIN SOTO
City Attorney
200 North Main Street, 8th Floor
Los Angeles, CA 90012
*Attorney for the City of Los Angeles,*
*California*

DAWYN HARRISON
County Counsel
648 Kenneth Hahn Hall of
Administration
500 West Temple Street
Los Angeles, CA 90012
*Attorneys for the County of*
*Los Angeles, California*

CHRISTOPHER M. SANDERS
General Counsel
401 5th Avenue, Suite 800
Seattle, WA 98104
*Attorney for Martin Luther King, Jr.*
*County, Washington*

ALLIE JACOBS
Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT 06510
*Attorney for the City of New Haven,*
*Connecticut*

MICHELE BEAL BAGNERIS
City Attorney
100 North Garfield Avenue,
Room N-210
Pasadena, CA 91109
*Attorney for the City of Pasadena,*
*California*

ROBERT TAYLOR
City Attorney
1221 Southwest Fourth Avenue,
Room 430
Portland, OR 97204
*Attorney for the City of Portland,*
*Oregon*

GUSTAVO L. MARTINEZ
Interim City Attorney
915 I Street, 4th Floor
Sacramento, CA 95814
*Attorney for City of Sacramento,*
*California*

DAMON BROWN
County Counsel
1600 Pacific Highway, Room 355
San Diego, CA 92101
*Attorney for the County of San Diego,*
*California*

DAVID CHIU
City Attorney
City Hall Room 234
One Dr. Carlton B. Goodlett Place
San Francisco, CA 94102
*Attorney for the City and County of*
*San Francisco, California*

SUSANA ACALA WOOD
City Attorney
200 East Santa Clara Street,
16th Floor
San José, CA 95113
*Attorney for the City of San José,*
*California*

20

HEIDI VON TONGELN
Interim City Attorney
1685 Main Street, Room 310
Santa Monica, CA 90401
*Attorney for the City of Santa Monica,*
*California*

ERIKA EVANS
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7097
*Attorney for the City of Seattle,*
*Washington*

LAUREN LANGER
City Attorney
Best, Best & Krieger LLP
300 South Grand Avenue,
25th Floor
Los Angeles, CA 90071
*Attorney for City of West Hollywood,*
*California*

21

## Appendix A - List of *Amici Curiae*

### Local Governments

City of Alameda, California

County of Alameda, California

City of Albany, New York

City of Ann Arbor, Michigan

City of Boston, Massachusetts

City of Cincinnati, Ohio

City of Columbus, Ohio

City of Culver City, California

City of Evanston, Illinois

King County, Washington

City of Long Beach, California

City of Los Angeles, California

County of Los Angeles, California

City of New Haven, Connecticut

City of Pasadena, California

City of Portland, Oregon

City of Sacramento, California

County of San Diego, California

City and County of San Francisco, California

City of San José, California

City of Santa Monica, California

City of Seattle, Washington

City of West Hollywood, California

22

**Local Government Leaders**

Bryan "Bubba" Fish
*Councilmember, City of Culver, California*

Matt Mahan
*Mayor, City of San Jose, California*

Yasmine-Imani McMorrin
*Councilmember, City of Culver, California*

Aftab Pureval
*Mayor, City of Cincinnati, Ohio*

Ryan Richardson
*City Attorney, City of Oakland, California*

23

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form17instructions.pdf](http://www.ca9.uscourts.gov/forms/form17instructions.pdf)

**9th Cir. Case Number(s)** | 26-926

The undersigned attorney or self-represented party states the following:

( • ) I am unaware of any related cases currently pending in this court.

( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/ Jenny Ma     **Date** | 04/28/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**          24          *New 12/01/2018*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 26-926

I am the attorney or self-represented party.

**This brief contains** | 4,187 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [         ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Jenny Ma | **Date** | 04/28/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*