**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellant*,

v.

STATE OF CALIFORNIA; GAVIN NEWSOM, in his Official Capacity; ROB BONTA, Attorney General of California, in his Official Capacity,

*Defendants - Appellees*.

No. 26-926

D.C. No. 2:25-cv-10999-CAS-AJR

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted August 25, 2026
Pasadena, California

October 14, 2026

Before: Jacqueline H. Nguyen, Mark J. Bennett, and Daniel P. Collins, Circuit Judges.

Opinion by Judge Bennett

## SUMMARY*

### Preliminary Injunction / Supremacy Clause

The panel reversed the district court's denial of a preliminary injunction, and remanded with instructions to enter a preliminary injunction enjoining the State of California, its Governor, and its Attorney General from applying or enforcing § 10 of the No Vigilantes Act against the United States, federal agencies, and federal officers.

Section 10 of the No Vigilantes Act requires any non-uniformed "federal law enforcement officer" operating in California, with narrow exceptions, to "visibly display identification" while performing federal law enforcement duties. Officers who violate the law may be criminally prosecuted by the State.

To obtain a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The first factor is the most important factor.

The United States elected to bring a facial challenge to § 10 of the No Vigilantes Act before California had a chance to begin enforcing it against any federal officers, and the United States must therefore show that no set of circumstances exist under which the Act would be valid. The


* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

United States invoked the doctrine of intergovernmental immunity and argued that § 10 is unconstitutional in all relevant applications. "[U]nder the intergovernmental immunity component of the Supremacy Clause to the United States Constitution, states may not directly regulate the Federal Government's operations or property." *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996).

The panel concluded that the United States was likely to succeed on the merits of its Supremacy Clause claim because § 10 of the No Vigilantes Act attempts to directly regulate the United States in its performance of governmental functions, and Congress has not authorized such regulation. Section 10 explicitly overrides the federal government's power to determine whether, how, and when to publicly identify its officers, and therefore regulates the manner and conditions under which federal agents can enforce federal law. Section 10 thus directly regulates inherently sovereign functions. Because Congress has not authorized such legislation, it is barred by intergovernmental immunity. The United States has also shown that no set of circumstances exist under which the Act would be valid.

The panel held that the other preliminary injunction factors also weighed in favor of the United States.

## COUNSEL

Andrew M. Bernie (argued), Mark R. Freeman, and Daniel Tenny, Attorneys, Appellate Staff; Eric D. McArthur, Deputy Assistant Attorney General; Brett A. Shumate, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Plaintiff-Appellant.

Mica L. Moore (argued), Deputy Solicitor General; Zachary W. Sorenson, Associate Deputy Solicitor General; Kristi A. Hughes, Zelda R. Vassar, Asha Albuquerque, Alyssa Zhang, and Cameron A. Bell, Deputy Attorneys General; Lee I. Sherman and Anna Ferrari, Supervising Deputy Attorneys General; Joshua A. Klein, Supervising Deputy Solicitor General; Michael L. Newman and Thomas S. Patterson, Senior Assistant Attorneys General; Samuel T. Harbourt, Solicitor General; Rob Bonta, California Attorney General; Office of the California Attorney General, Los Angeles, California; for Defendants-Appellees.

Burt M. Rublin, Ballard Spahr LLP, Philadelphia, Pennsylvania; Lauren C. Bingham and Nikhel S. Sus, Citizens for Responsibility and Ethics in Washington, Washington, D.C.; for Amicus Curiae Citizens for Responsibility and Ethics in Washington.

Jenny Ma, Jean Larsen, and Christopher Peña, Public Rights Project, Oakland, California, for Amici Curiae Local Governments and Local Government Leaders.

## OPINION

BENNETT, Circuit Judge:

The United States brings a facial challenge to provisions of two laws enacted by the State of California: S.B. 805 (also known as the "No Vigilantes Act") and S.B. 627 (also known as the "No Secret Police Act"). At this stage, the United States appeals the district court's denial of a preliminary injunction enjoining California, its Governor, and its Attorney General from applying or enforcing § 10 of the No Vigilantes Act, codified at California Penal Code § 13654, against federal agencies and officers.

Section 10 requires any non-uniformed "federal law enforcement officer" operating in California, with narrow exceptions, to "visibly display identification" while performing federal law enforcement duties. Cal. Penal Code § 13654(a), (d)(2). Officers who violate the law may be criminally prosecuted by the State. *See id.* § 13654(c).

We previously granted the United States's motion for an injunction pending appeal. *See United States v. California*, 173 F.4th 1060, 1063 (9th Cir. 2026). As before, we conclude that the United States is likely to succeed on the merits of its Supremacy Clause claim because § 10 of the No Vigilantes Act attempts to directly regulate the United States in its performance of governmental functions, and Congress has not authorized such regulation. Indeed, we conclude that the United States is certain to succeed. The other preliminary injunction factors also weigh in its favor. Thus, we reverse and remand and instruct the district court to enter a preliminary injunction enjoining the State of California, its Governor, and its Attorney General from applying or enforcing § 10 of the No Vigilantes Act, S.B. 805, 2025 Gen.

Assemb., Reg. Sess. (Cal. 2025) (codified at Cal. Penal Code § 13654), against the United States, federal agencies, and federal officers.

**I**

**A**

On September 20, 2025, in response to the United States's "broad immigration enforcement efforts," California enacted the No Vigilantes Act. S.B. 805 § 1, 2025 Gen. Assemb., Reg. Sess. (Cal. 2025). Two of the No Vigilantes Act's provisions are relevant.

Section 10 generally mandates the visible display of identification by law enforcement officers operating within the State. *See* Cal. Penal Code § 13654. It provides that any "law enforcement officer operating in California that is not uniformed . . . shall visibly display identification that includes their agency and either a name or badge number or both name and badge number when performing their enforcement duties." *Id.* § 13654(a). "Law enforcement officer" is defined to include "any federal law enforcement officer." *Id.* § 13654(d)(2). And "'[e]nforcement duties' means active and planned operations involving the arrest or detention of an individual, or deployment for crowd control purposes." *Id.* § 13654(d)(1). An officer's "willful and knowing violation of [§ 10] is punishable as a misdemeanor" under California law. *Id.* § 13654(c).

Section 10 has several exceptions. The identification requirement does not apply to: (1) "[a]n officer engaged in active undercover operations or investigative activities"; (2) "[a]n officer engaged in plainclothes operations" who is employed by certain specified state agencies or their

"federal equivalents";[1] (3) "[a]n officer wearing personal protective equipment that prevents display"; (4) "[e]xigent circumstances, involving an imminent danger to persons or property, or the escape of a perpetrator, or the destruction of evidence, including if the officer is responding to those circumstances while off-duty"; (5) "[a]n officer assigned to Special Weapons and Tactics (SWAT) or tactical team units and actively performing their SWAT or tactical team responsibilities"; or (6) "[a]n officer engaged in protective operations involving elected officials, judicial officers, or other designated dignitaries where the display of identification would compromise the safety, anonymity, or tactical effectiveness of the protection detail." *Id.* § 13654(b)(1)–(6).

Section 2 orders agencies to adopt written policies on the use of identification. *See* Cal. Gov't Code § 7288. It directs that "a law enforcement agency operating in California," including "[a]ny federal law enforcement agency," "shall maintain and publicly post a written policy on the visible identification of sworn personnel." *Id.* § 7288(a), (c)(2)(C). To comply with § 2, the policy must include "[a] purpose statement," and "[a] requirement that all sworn personnel visibly display identification that includes their agency and either a name or badge number, or both name and badge

[1] These agencies are: the California Business, Consumer Services, and Housing Agency; the California Health and Human Services Agency; the California Labor and Workforce Development Agency; the California Natural Resources Agency; the California Department of Corrections and Rehabilitation; the California Transportation Agency; the California Environmental Protection Agency; the California Government Operations Agency; and "any department, board, commission, or other entity in those agencies." *See* Cal. Penal Code § 13654(b)(2).

number, when performing enforcement duties," subject only to "[a] list of narrowly tailored exemptions." *Id.* § 7288(a)(1)–(3).

The No Vigilantes Act also includes a safe harbor provision. The identification requirement and criminal penalties for failure to comply do not apply "to any law enforcement agency, or its personnel, if that agency maintains and publicly posts a written policy pursuant to [§ 2 of the Act]." Cal. Penal Code § 13654(e).

For federal agencies and officers, the No Vigilantes Act's mandate is clear. Each federal law enforcement agency operating in California must decide whether to "maintain and publicly post a written policy" that directs "all sworn personnel" to "visibly display identification . . . when performing enforcement duties." Cal. Gov't Code § 7288(a), (a)(2). If a federal agency declines to do so, it violates California law and, in many circumstances, subjects its officers to the threat of criminal prosecution by the State. *See* Cal. Penal Code § 13654(c), (e). And if a federal agency complies, its officers must then display identification in accordance with the dictates of California law. *See* Cal. Gov't Code § 7288.

On the same day that California enacted the No Vigilantes Act, it also enacted the No Secret Police Act, S.B. 627, 2025 Gen. Assemb., Reg. Sess. (Cal. 2025). Section 3 of the No Secret Police Act mandates that "[a] law enforcement officer," including "any officer or agent of a federal law enforcement agency," "shall not wear a facial covering that conceals or obscures their facial identity in the performance of their duties, except as expressly authorized." Cal. Penal Code § 185.5(a), (e). Unless one of the statute's exceptions applies, *see id.* § 185.5(c), an officer's "willful

and knowing violation of [§ 3] is punishable as an infraction or a misdemeanor" under California law, *id.* § 185.5(d).

Section 2 of the No Secret Police Act requires "a law enforcement agency operating in California" to "maintain and publicly post a written policy regarding the use of facial coverings." Cal. Gov't Code § 7289(a). And here, too, a law enforcement officer whose agency "maintains and publicly posts . . . a written policy pursuant to [§ 2]" is not subject to the facial-covering requirement and criminal penalties for failure to comply. Cal. Penal Code § 185.5(f).

**B**

On November 17, 2025, the United States sued California, Governor Gavin Newsom, and Attorney General Rob Bonta. The United States's complaint facially challenges §§ 2 and 10 of the No Vigilantes Act and §§ 2 and 3 of the No Secret Police Act. The United States contends that these provisions violate the Supremacy Clause by attempting to directly regulate its operations. As to the No Secret Police Act, the United States alleges that the challenged provisions also violate the Supremacy Clause by discriminating against the federal government.

In the district court, the United States moved for a preliminary injunction to enjoin enforcement of these statutory provisions against federal agencies and officers. With respect to the No Vigilantes Act, the district court declined relief. As to § 2, it determined that the United States lacks Article III standing to challenge the provision requiring agencies to adopt written policies. The United States does not contest this ruling on appeal.

As to § 10, the district court concluded that the United States "ha[d] not met its burden to show that enforcement of

the challenged provisions . . . would interfere with or take control of federal law enforcement operations." While recognizing that the statute "dictate[s] how a federal officer may carry out his law enforcement duties," the district court determined that "the United States ha[d] not shown that its current practices with respect to . . . identification are essential to federal law enforcement operations such that state regulations in those areas seek to interfere with or control federal law enforcement functions."

The district court granted partial relief in connection with the No Secret Police Act, however. It concluded that the United States's challenge as to § 3 was likely to succeed on the merits because the prohibition on wearing face coverings "unlawfully discriminates against the federal government in violation of the intergovernmental immunity doctrine." So the district court preliminarily enjoined its enforcement against "federal law enforcement officers." But here, too, it determined that the United States lacks standing to challenge § 2—the provision directing agencies to adopt policies on the use of face coverings.

The United States appeals the denial of preliminary injunctive relief solely as to § 10 of the No Vigilantes Act, the identification requirement. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). No party has appealed the district court's rulings with respect to the No Secret Police Act.

**C**

Seeking emergency relief in this court, the United States moved for an injunction pending appeal and also requested a temporary "administrative" injunction. The motion sought to enjoin only § 10 of the No Vigilantes Act. On February 19, 2026, we entered a temporary administrative

injunction which barred defendants from applying or enforcing § 10 against federal agencies and officers.

On April 22, 2026, after hearing argument, we granted the United States's motion for an injunction pending appeal. *See California*, 173 F.4th at 1069. We concluded that the United States was likely to succeed on the merits of its Supremacy Clause claim because § 10 of the No Vigilantes Act attempts to directly regulate the United States in its performance of governmental functions. *See id.* at 1067–68. And we found that the other preliminary injunction factors also weighed in its favor. *See id.* at 1068–69. So we enjoined the State of California, its Governor, and its Attorney General, pending further order of the court, from applying or enforcing § 10 of the No Vigilantes Act against federal agencies and officers. *See id.* at 1069.

This appeal was assigned under Ninth Circuit General Order 6.4(d). Thus, the same panel now addresses the merits of the United States's appeal from the denial of preliminary injunctive relief. In doing so, we fully adopt, including for precedential purposes, the analysis in our opinion granting an injunction pending appeal.

## II

### A

To obtain a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The first factor "is a threshold inquiry and is the most

important factor." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).

"We review the district court's denial of preliminary injunctive relief for abuse of discretion . . . ." *Babaria v. Blinken*, 87 F.4th 963, 976 (9th Cir. 2023). "A district court abuses its discretion if it rests its decision 'on an erroneous legal standard or on clearly erroneous factual findings.'" *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (en banc) (quoting *United States v. Schiff*, 379 F.3d 621, 625 (9th Cir. 2004)). A district court bases its decision on an erroneous legal standard if: "(1) the court did not employ the appropriate legal standards that govern the issuance of a preliminary injunction; or (2) in applying the appropriate standards, the court misapprehended the law with respect to the underlying issues in the litigation." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 475 (9th Cir. 2022) (quoting *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1096 (9th Cir. 2008)).

**B**

The United States elected to bring a facial challenge to § 10 of the No Vigilantes Act before California had a chance to begin enforcing it against any federal officers. As a result, it must show that "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The United States invokes the doctrine of intergovernmental immunity and contends that § 10 is unconstitutional in all relevant applications.

"[U]nder the intergovernmental immunity component of the Supremacy Clause to the United States Constitution, states may not directly regulate the Federal Government's operations or property." *Blackburn v. United States*, 100

F.3d 1426, 1435 (9th Cir. 1996). "It is of the very essence of supremacy," the Supreme Court has emphasized, "to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their own influence." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819). To that end, "states have no power" to "in any manner control[] the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government." *Id.* at 436. And "where 'Congress does not affirmatively declare its instrumentalities or property subject to regulation,' 'the federal function must be left free' of regulation" by the States. *Hancock v. Train*, 426 U.S. 167, 179 (1976) (quoting *Mayo v. United States*, 319 U.S. 441, 447–48 (1943)); *see also Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 176 (1988) ("It is well settled that the activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation." (quoting *EPA v. State Water Res. Control Bd.*, 426 U.S. 200, 211 (1976))).

Intergovernmental immunity "prohibit[s] state laws that *either* 'regulat[e] the United States directly *or* discriminat[e] against the Federal Government or those with whom it deals' (*e.g.*, contractors)." *United States v. Washington*, 596 U.S. 832, 838–39 (2022) (first alteration added) (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion)). A direct regulation is one that "lays hold of" federal officers "in their specific attempt to obey orders and requires qualifications in addition to those that the [federal] Government has pronounced sufficient." *Johnson v. Maryland*, 254 U.S. 51, 57 (1920). It imposes conditions

upon "a function of government," and it regulates "the right to carry on the business" of the federal government. *Mayo*, 319 U.S. at 447. Put another way, a direct regulation regulates the government *qua* government; it controls how the government conducts specifically governmental functions.

The Supremacy Clause prohibits States from directly regulating federal operations even when regulating *state* operations in the same manner. *See Johnson*, 254 U.S. at 56–57 ("[E]ven the most unquestionable and most universally applicable of state laws, such as those concerning murder, will not be allowed to control the conduct of a marshal of the United States acting under and in pursuance of the laws of the United States." (citing *In re Neagle*, 135 U.S. 1 (1890))). And critically, "Supreme Court case law compels the rejection of a de minimis exception to the doctrine of intergovernmental immunity." *United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019); *see also Johnson*, 254 U.S. at 55–56. So "[a] state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid, even if it is no more restrictive than federal law." *United States v. City of Arcata*, 629 F.3d 986, 991–92 (9th Cir. 2010).

In sum, if a state law directly regulates the governmental conduct of the United States without congressional authorization, it is void irrespective of whether the regulated activities are essential to federal functions or operations, and irrespective of the degree to which the state law interferes with such functions or operations.

## III

### A

Section 10 of the No Vigilantes Act expressly applies to federal officers. *See* Cal. Penal Code § 13654(d)(2). It controls the conduct of those federal officers in performing law enforcement operations. *See id.* § 13654(a), (d)(1). Section 10 explicitly overrides the federal government's power to determine whether, how, and when to publicly identify its officers. *See id.* § 13654(a). And in so doing, it regulates the manner and conditions under which federal agents can enforce federal law. *See id.* Again, § 10 defines "law enforcement officer" as including "any federal law enforcement officer." *Id.* § 13654(d)(2). And any non-uniformed federal law enforcement officer "operating in California" "shall visibly display identification that includes their agency and either a name or badge number or both name and badge number when performing their enforcement duties." *Id.* § 13654(a).

These provisions "lay[] hold of" federal agencies and officers "in their specific attempt to obey orders and require[] qualifications in addition to those that the [federal] Government has pronounced sufficient." *Johnson*, 254 U.S. at 57. As a result, § 10 regulates the performance of "governmental action[s]" which are "carried on by the United States itself"—not merely "persons who [a]re acting for themselves and not for the United States." *Mayo*, 319 U.S. at 447–48. Indeed, it applies only to law enforcement agencies and their officers, including federal law enforcement agencies and federal law enforcement officers. Section 10 thus directly regulates inherently sovereign functions. Because Congress has not authorized such legislation, it is barred by intergovernmental immunity.

The United States has also shown that "no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745. Again, § 10 exclusively regulates quintessentially government conduct: law enforcement. So as applied to federal agencies and federal officers carrying out their duties under federal authority, the statute is invalid in all applications. The United States is therefore likely—indeed, certain—to succeed on the merits of its facial challenge to § 10's constitutionality.

**B**

California again advances its view that a state statute constitutes an impermissible direct regulation only when the law "impose[s] substantial burdens on federal operations." The district court agreed, looking to the degree that § 10 interfered with the activities of the United States. This was error. The district court applied, and California urges us to adopt, the standard applicable to States' regulation of federal contractors and third-party employers—not the standard that governs direct regulation of the United States's governmental activities. *See, e.g.*, *North Dakota*, 495 U.S. at 437 (plurality opinion) (explaining that the regulations at issue did "not implicate[]" "concerns about direct interference with the Federal Government" because they "operate[d] against suppliers, not the Government"); *California*, 921 F.3d at 880 (explaining that intergovernmental immunity does not apply where a law "is directed at the conduct of *employers*, not the United States or its agents, and no federal activity is regulated").

"Private contractors do not stand on the same footing as the federal government, so states can impose many laws on federal contractors that they could not apply to the federal government itself." *Geo Grp., Inc. v. Newsom*, 50 F.4th 745,

750 (9th Cir. 2022) (en banc). But "where, as here, the governmental action is carried on by the United States itself and Congress does not affirmatively declare its instrumentalities or property subject to regulation or taxation, the inherent freedom [from direct regulation] continues." *See Mayo*, 319 U.S. at 448. So the burden of the regulation on federal operations, whether substantial or otherwise, is irrelevant because, as discussed, there is no de minimis exception to the United States's immunity from direct regulation. *See California*, 921 F.3d at 883.

To be sure, the Supremacy Clause likely does not "bar[] *all* state regulation which may touch the activities of the Federal Government." *Hancock*, 426 U.S. at 179 (emphasis added). For example, in *Johnson v. Maryland*, the Supreme Court suggested that "when the United States has not spoken," States *might* be able to impose on federal officers "general rules that might affect incidentally the mode of carrying out the[ir] employment—as, for instance, *a statute or ordinance regulating the mode of turning at the corners of streets*." 254 U.S. at 56 (emphasis added). But the Court has never relied on that distinction to uphold a State's direct regulation of federal functions performed by federal officers. And unlike traffic laws which, for example, might require a full stop before a right turn, and which regulate conduct that any ordinary citizen could engage in, § 10 applies *exclusively* to law enforcement officials and *exclusively* to their performance of law enforcement operations. Thus, § 10 does not just "incidentally" sweep up the conduct of federal officers carrying out their duties. So even if we were to read *Johnson* as carving out an exception to intergovernmental immunity for laws of general applicability that affect federal operations in incidental ways—an issue that we need not and do not resolve today—

such a putative exception would not apply here because § 10 is neither generally applicable nor its effect on federal officers "incidental."

Taking a different tack, California argues that the Supremacy Clause "provides a case-specific defense that confers immunity on federal officers who can show that they held an 'honest and reasonable belief' that the charged conduct was 'necessary in the performance of [their] duty.'" (quoting *Clifton v. Cox*, 549 F.2d 722, 729 (9th Cir. 1977)). From there, the State contends that the United States's facial challenge must fail because there is no "reason to believe that in all (or nearly all) cases where [§ 10] might apply, the federal officer would be covered by the case-specific defense."

We agree that federal officers are immune from state criminal prosecution under state laws regulating conduct of members of the general public "only when [their] acts are both (1) authorized by the laws of the United States and (2) necessary and proper to the execution of [their] responsibilities." *Morgan v. California*, 743 F.2d 728, 731, 733 (9th Cir. 1984); *see also Neagle*, 135 U.S. at 62, 75–76. And under this standard, an officer need not "show that his action was in fact necessary or in retrospect justifiable, only that he reasonably thought it to be." *Clifton*, 549 F.2d at 728. The immunity at issue here, however, belongs to the *United States*, which enjoys a distinct form of immunity under the Supremacy Clause: intergovernmental immunity. Thus, whether any officer would hold an honest and reasonable belief that the charged conduct was necessary to perform his or her duty is irrelevant to whether the United States, or an agent exercising quintessentially governmental authority of the United States, is entitled to complete and total immunity from regulation of the type embodied in § 10. To reiterate,

§ 10, by its explicit terms, expressly regulates the conduct of federal officers while those officers are discharging *law enforcement duties under federal authority*. *See* Cal. Penal Code § 13654(a), (d). So an individual officer would be entitled to a Supremacy Clause defense against any prosecution brought under the statute.

## IV

In addition to demonstrating a likelihood of success on the merits, a party seeking a preliminary injunction must also show that it "is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—'merge.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)), *overruled on other grounds by Ariz. All. for Retired Ams. v. Mayes*, 186 F.4th 622 (9th Cir. 2026) (en banc).

When "a plaintiff seeks a preliminary injunction because of an alleged constitutional violation" and "shows [it] is likely to prevail on the merits, that showing will almost always demonstrate [it] is suffering irreparable harm as well." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). "[T]he deprivation of constitutional rights," we have emphasized, "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *see also Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Here, irreparable harm necessarily results

from allowing California to enforce a law we hold is invalid, ab initio, under the Supremacy Clause.

"A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in [its] favor." *Baird*, 81 F.4th at 1042. "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (cleaned up) (first quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); and then quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)); *see also California*, 921 F.3d at 893 ("[P]reventing a violation of the Supremacy Clause serves the public interest."). Accordingly, plaintiffs who have "establish[ed] a likelihood that [a] policy violates the U.S. Constitution . . . have also established that both the public interest and the balance of the equities favor a preliminary injunction." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

Because the United States has shown that § 10 of the No Vigilantes Act violates the Supremacy Clause, it has also shown that both the public interest and balance of the equities tip "decisively in . . . favor" of a preliminary injunction. *Baird*, 81 F.4th at 1042; *see Ariz. Dream Act Coal.*, 757 F.3d at 1069. Thus, the other preliminary injunction factors weigh in the United States's favor.

## V

For these reasons, we REVERSE the district court's denial of a preliminary injunction and REMAND with instructions to enter a preliminary injunction enjoining the State of California, its Governor, and its Attorney General

from applying or enforcing § 10 of the No Vigilantes Act, S.B. 805, 2025 Gen. Assemb., Reg. Sess. (Cal. 2025) (codified at Cal. Penal Code § 13654), against the United States, federal agencies, and federal officers.

**REVERSED and REMANDED.**